United States Court of Appeals,

Fifth Circuit.

No. 91-6204.

Israel Lozano MOLINA, Plaintiff-Appellant,

v.

Omer G. SEWELL, District Director, Immigration and Naturalization Service, et al., Defendants-Appellees.

Feb. 22, 1993.

Appeal from the United States District Court for the Southern District of Texas.

Before KING, JOHNSON, and DUHÉ, Circuit Judges.

DUHÉ, Circuit Judge:

Israel Lozano Molina, an alien, was admitted as a lawful permanent resident of the United States in 1980. Five years later he was convicted of a crime involving marihuana, for which the INS commenced deportation proceedings. Out on bond pending deportation proceedings, Lozano departed to Mexico. Upon his same-day return to the States, Lozano was detained at the border and placed in exclusion proceedings. The Immigration Judge (IJ) found him excludable, and his appeal to the Board of Immigration Appeals (BIA) was dismissed. He now appeals summary dismissal of his petition for writ of habeas corpus[1] seeking review of the order of exclusion. Finding prejudicial error in the IJ's failure to advise Lozano of his rights, we vacate and remand.

I. Were Exclusion Proceedings Proper?

Because Lozano was a permanent resident who was returning to the United States from a day trip to Mexico, the question whether his arrival was an "entry" into this country looms like a dark cloud over this case. Although this question has never been fully litigated, only aliens seeking to "enter" are subject to exclusion. *Landon v. Plasencia,* 459 U.S. 21, 28, 103 S.Ct. 321, 326, 74 L.Ed.2d 21 (1982) (interpreting 8 U.S.C.A. § 1226(a) (West 1970)).

Lozano asserts that the question whether he was making an "entry" should have been

---

[1]An alien may obtain judicial review of a final order of exclusion "by habeas corpus proceedings and not otherwise." 8 U.S.C.A. § 1105a(b) (West 1970).

determined first. The Government and the IJ assumed that Lozano was making an entry, and he put on no evidence to the contrary.

## II. Why No Evidence on "Entry"?

Lozano contends that it was the Government's burden to establish that he was seeking "entry" into the United States. We disagree. The alien bears the burden to prove he comes within the statutory exception to the entry definition. *Dabone v. Karn,* 763 F.2d 593, 597 (3d Cir.1985). The statute defining entry provides in part, "an alien having a lawful permanent residence ... shall not be regarded as making an entry into the United States ... *if the alien proves* to the satisfaction of the Attorney General" that his departure to a foreign port was unintended or involuntary. 8 U.S.C.A. § 1101(a)(13) (West 1970) (emphasis added).

*Dabone* distinguishes, and we think correctly, the burden of proving the statutory exception to "entry"—the alien's burden—from the burden of proving that a permanent resident alien is excludable—the INS's burden. *Dabone* at 597. Similarly, if the alien desires to show that he comes within the " "judicial gloss' ... added to the statutory definition [of entry] by the Supreme Court's decision in *Rosenberg v. Fleuti,* 374 U.S. 449 [83 S.Ct. 1804, 10 L.Ed.2d 1000] (1963)," the burden is still on the alien. *Dabone,* 763 F.2d at 596. (*Fleuti,* discussed below, held that the statute's "unintended or involuntary" exception requires an intent to depart in a "meaningfully interruptive" manner).

Although we disagree with Lozano that the burden to prove "entry" was on the Government rather than the alien, Lozano's failure to raise the issue before the IJ was excused in this case. After a couple of continuances, the IJ proceeded with the exclusion hearing despite Lozano's failure to secure counsel. Upon Lozano's admission that he had been convicted of a crime involving marihuana, the IJ concluded that no relief from exclusion was available to him and found Lozano to be excludable. Contrary to INS regulations, however, Lozano was never advised that he had the opportunity to put on evidence on his behalf.

On appeal to the BIA Lozano argued that the IJ erred in failing to advise him of his rights. The regulations provide that the IJ shall

inform the applicant of the nature and purpose of the hearing;  advise him of the privilege of being represented by an attorney ... and the availability of free legal services ...;  [and] advise him that he will have a reasonable opportunity to present evidence on his own behalf, to examine and object to evidence against him, and to cross-examine witnesses presented by the Government.

8 C.F.R. § 236.2(a) (1992).

While the BIA agreed that Lozano had not been advised of his right to present evidence or object to the Government's evidence, it concluded that Lozano had failed to allege or establish that he had been prejudiced by the omission.  To prove that administrative proceedings should be invalidated for violation of regulations, an alien must show substantial prejudice.  *See Ka Fung Chan v. INS,* 634 F.2d 248, 258 (5th Cir. Jan. 1981).  Although no evidence of entry was adduced before the IJ, the BIA and the district court concluded that Lozano was effecting an entry as a matter of law.  The narrower questions become whether Lozano "entered" as a matter of law and whether he was prejudiced by his failure to present evidence on entry.

### III. Did Lozano "Enter" as a Matter of Law?

The statute defines "entry" as

any coming of an alien into the United States ... except that an alien having a lawful permanent residence in the United States shall not be regarded as making an entry ... if the alien proves to the satisfaction of the Attorney General that his departure ... was not intended or reasonably to be expected by him or his presence in a foreign ... place was not voluntary:  *Provided,* That no person whose departure from the United States was occasioned by deportation proceedings, extradition, or other legal process shall be held to be entitled to such exception.

8 U.S.C.A. § 1101(a)(13) (West 1970).

The Supreme Court in *Rosenberg v. Fleuti,* 374 U.S. 449, 83 S.Ct. 1804, 10 L.Ed.2d 1000 (1963), construed the "intent" exception in this statute.  *Fleuti* held that a resident alien does not effect an "entry" for purposes of § 1101(a)(13) when he returns from an "innocent, casual, and brief excursion" outside the United States;  rather, such an alien effects an entry only if he intended to depart in a manner "meaningfully interruptive" of his permanent residence.  *Fleuti* at 462, 83 S.Ct. at 1812.

In dismissing Lozano's appeal, the BIA observed that, because Lozano was subject to deportation proceedings when he departed, "his departure would probably be considered to be a

meaningful one."[2] The district court, too, found that Lozano effected an entry because pending deportation proceedings made his absence significant:

> [Lozano] indicates that he was not advised of his rights to present evidence with regards to the exclusion hearing. However, the court is going to note that he has not alleged that he was prejudiced by his inability to present evidence on this point. He was—they were proceeding on the fact that he had a drug conviction and it is well settled that when an alien departs the U.S. while under deportation proceedings as I said, his absence is not brief, or innocent, and therefore he effects an entry when he returned from the absence, and therefore, based on my findings with regards to that there has been no abuse [of discretion]....[3]

4 R. 4. Both the district court and the BIA concluded that pending deportation proceedings made Lozano's departure "meaningful" under *Fleuti* and his return to this country an "entry" under the statute.

Arguing that Lozano was "entering" as a matter of law because of pending deportation proceedings, the Government cites *In re Becerra-Miranda,* 12 I. & N. Dec. 358 (BIA 1967). Although Becerra had briefly departed to Mexico, the BIA found him subject to exclusion proceedings under such circumstances:

> It is our belief that the reasonable man, being advised that deportation proceedings were pending against him, ... would have been put on notice that the continuance and legality of his status in the United States was in question. A departure from the country, for no matter what purpose, under those circumstances could reasonably be assumed to carry with it the possibility that it might change the applicant's status in the United States and his ability to reenter.

*Becerra-Miranda,* 12 I. & N. Dec. at 363.

We decline to follow *Becerra.* We consider such a purely objective standard as the *Becerra* court applied contrary to the subjective *Fleuti* inquiry. *Fleuti* held that whether a permanent resident alien effects an "entry" depends on whether *he intended* to depart in a manner meaningfully

---

[2] 3 R. 78. The BIA was apparently acknowledging the *Fleuti* requirement of a meaningful interruption rather than the statutory reference to deportation proceedings; there has been no suggestion that Lozano's departure was "occasioned by deportation proceedings," 8 U.S.C.A. § 1101(a)(13), so as to subject him to the statutory exception.

[3] Petitioner correctly argues that questions of law should have been reviewed by the district court de novo, rather than for abuse of discretion. *See* 5 U.S.C.A. § 706 (West 1977) (providing that regarding an agency's order, "the reviewing court shall decide all relevant questions of law"); *see also Baker v. Metcalfe,* 633 F.2d 1198, 1201 (5th Cir.) (reviewing conclusions of law in a habeas corpus case de novo), *cert. denied,* 451 U.S. 974, 101 S.Ct. 2055, 68 L.Ed.2d 354 (1981).

interruptive of his permanent residence. *Fleuti,* 374 U.S. at 462, 83 S.Ct. at 1812. The *Fleuti* Court identified three factors relevant to the intent inquiry: 1) the length of time the alien is absent, 2) the purpose of the visit, and 3) whether travel documents were required. *Id.* Fleuti thus considers the intent of the alien and the purpose of the trip.[4]

*Landon v. Plasencia* also dissuades us from adopting the *Becerra* rule. *Landon* recognized that, unlike an alien seeking to enter the United States for the first time, a returning resident alien retains a constitutional right to due process. 459 U.S. at 32-33. The fact that an alien is subject to deportation proceedings does not affect his status as a permanent resident alien. A permanent resident alien's status terminates only when the order of deportation is affirmed by the BIA or otherwise becomes administratively final. *Rivera v. INS,* 810 F.2d 540, 542 (5th Cir.1987); *see also* 8 U.S.C.A. § 1101(a)(20) (West 1970) (defining "lawfully admitted for permanent residence" as "the status of having been lawfully accorded the privilege of residing permanently in the U.S.... *such status not having changed* ") (emphasis added).

Lozano was indisputably a permanent resident alien when he departed to Mexico. Although he was subject to deportation proceedings, no final order had issued. To conclude that upon his return to the United States Lozano effected an "entry" as a matter of law is inconsistent with the due process requirements of *Landon* and contrary to the subjective inquiry mandated by *Fleuti.* The conclusion that Lozano could not have prevailed as a matter of law on his "entry" claim is incorrect.

### IV. Did Lozano Establish Prejudice?

In dismissing Lozano's appeal, the BIA concluded that Lozano established no prejudice by the IJ's failure to advise him of his rights because he could not show that a motion to terminate the proceedings might have been successful. The district court, too, found that Lozano had not alleged prejudice from the IJ's failure to advise him of his right to present evidence.

---

[4]This court has drawn fine distinctions in conducting a subjective inquiry. *See Vargas-Banuelos v. INS,* 466 F.2d 1371, 1372-74 (5th Cir.1972) (concluding that an alien who formed the intent to commit a crime after he departed did not depart for an unlawful purpose under the *Fleuti* analysis). Other circuits also consider the subjective purpose of an alien's departure. *E.g., Jubilado v. United States,* 819 F.2d 210, 213-14 (9th Cir.1987) (concluding that an alien's return after three months did not constitute an entry because the purpose of his trip and his intent were to preserve and continue permanent resident status).

In his appeal to the BIA, Lozano indeed alleged that he was prejudiced by the IJ's failure to advise him of his right to present evidence. He asserted that the oversight "deprived [him] of a reasonable opportunity to explain the very brief departure, dictated by emergent family reasons, which caused him to be placed in exclusion proceedings. Had this issue been explored, the grounds for a motion to terminate exclusion proceedings ... would have been apparent." 3 R. 42 (BIA Br. of Mr. Lozano at 8).

Had Lozano been able to persuade the IJ with his evidence that his trip to Mexico was "innocent, casual, and brief," the exclusion proceedings would have been terminated: Lozano would have established that he was not "entering" the United States within the meaning of § 1101(a)(13) as construed in *Fleuti*. Lozano has suggested that, given the opportunity, he would have shown that he was not subject to exclusion proceedings. Accordingly, Lozano has adequately established prejudice in not having been offered an opportunity to put on evidence.

## V. New Evidence for the IJ

Alternative grounds for our ruling exist. The district court's and BIA's conclusions that Lozano could not have prevailed on his "entry" claim relied upon facts not raised before the IJ—that Lozano was subject to deportation proceedings at the time of his departure to Mexico. The INS's reply brief before the BIA first mentioned Lozano's pending deportation proceedings, although nothing in the record reflected such pending proceedings. Lozano replied with a motion to strike the INS brief (because it contained references to extra-record material) or, in the alternative, to augment the record with affidavits.

Lozano's affidavit described that his departure to Mexico lasted less than one day and declared that he had asked his mother to go with him to the exclusion hearing so that she could "explain about the trip." Lozano also filed a motion to terminate the exclusion proceedings. The BIA did not rule on these motions before dismissing Lozano's appeal. The BIA subsequently considered the motions and denied them as both procedurally improper and without merit.

We therefore hold, alternatively, that the BIA abused its discretion in relying upon the INS's statements regarding facts not in evidence before the IJ, while refusing to consider the affidavits

submitted by Lozano. *See Ghassan v. INS,* 972 F.2d 631, 638 (5th Cir.1992) (concluding that BIA abused its discretion in failing to remand to IJ for consideration of evidence that was not before the IJ), *petition for cert. filed,* 61 U.S.L.W. 3420 (U.S. Nov. 20, 1992) (No. 92-872).

## CONCLUSION

Because Lozano has adequately alleged prejudice in the violation of an INS regulation, the writ should be granted, the exclusion order vacated, and the matter remanded so that Lozano can be heard on his motion to terminate exclusion proceedings.

VACATED and REMANDED.